

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MARIA AVILA,                          )   No. CV 16-838-PLA
                                      )
              Plaintiff,              )   **MEMORANDUM OPINION AND ORDER**
                                      )
         v.                           )
                                      )
CAROLYN W. COLVIN, ACTING             )
COMMISSIONER OF SOCIAL                )
SECURITY ADMINISTRATION,              )
                                      )
              Defendant.              )
_____)

I.

**PROCEEDINGS**

Plaintiff filed this action on February 5, 2016, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on March 14, 2016, and March 25, 2016.  Pursuant to the Court's Order, the parties filed an Amended Joint Stipulation (alternatively "AJS") on October 19, 2016, that addresses their positions concerning the disputed issues in the case.[1]  The Court has taken the Amended Joint

_____

[1]   Defendant timely filed the original Joint Stipulation, which did not contain plaintiff's reply
(continued...)

1 | Stipulation under submission without oral argument.

2

3 | **II.**

4 | **BACKGROUND**

5 | Plaintiff was born on March 12, 1959. [Administrative Record ("AR") at 207, 214.] She has

6 | past relevant work experience as a cook, and a short order cook. [AR at 29, 45.]

7 | On August 28, 2012, plaintiff filed an application for a period of disability and DIB, and an

8 | application for SSI payments, alleging that she has been unable to work since December 1, 2009.

9 | [AR at 22, 207-13, 214-19.] After her applications were denied initially and upon reconsideration,

10 | plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at

11 | 22, 107-08.]  A hearing was held on September 29, 2014, at which time plaintiff appeared

12 | represented by an attorney, and testified on her own behalf. [AR at 35-48.] A vocational expert

13 | ("VE") also testified. [AR at 44-47.] On October 22, 2014, the ALJ issued a decision concluding

14 | that plaintiff was not under a disability from December 1, 2009, the alleged onset date, through

15 | October 22, 2014, the date of the decision. [AR at 22-30.] Plaintiff requested review of the ALJ's

16 | decision by the Appeals Council. [AR at 12-15.]  When the Appeals Council denied plaintiff's

17 | request for review on December 7, 2015 [AR at 1-7], the ALJ's decision became the final decision

18 | of the Commissioner.   See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam)

19 | (citations omitted).  This action followed.

20

21 | **III.**

22 | **STANDARD OF REVIEW**

23 | Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

24 | decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

25

26 | _____

27 | [1](...continued)
arguments, on October 12, 2016.  (ECF No. 17).  On October 20, 2016, the Court granted
plaintiff's Request for an Extension of Time to File an Amended Joint Stipulation, containing her

28 | reply arguments.

evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).   When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

3

1   whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821,

2   828 n.5 (9th Cir. 1995), <u>as amended</u> April 9, 1996.  In the first step, the Commissioner must

3   determine whether the claimant is currently engaged in substantial gainful activity; if so, the

4   claimant is not disabled and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in

5   substantial gainful activity, the second step requires the Commissioner to determine whether the

6   claimant has a "severe" impairment or combination of impairments significantly limiting her ability

7   to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u>

8   If the claimant has a "severe" impairment or combination of impairments, the third step requires

9   the Commissioner to determine whether the impairment or combination of impairments meets or

10   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,

11   subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  <u>Id.</u>

12   If the claimant's impairment or combination of impairments does not meet or equal an impairment

13   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

14   sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

15   and the claim is denied.  <u>Id.</u>  The claimant has the burden of proving that she is unable to

16   perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets this burden, a

17   <u>prima facie</u> case of disability is established.  <u>Id.</u>  The Commissioner then bears the burden of

18   establishing that the claimant is not disabled, because she can perform other substantial gainful

19   work available in the national economy.  <u>Id.</u>  The determination of this issue comprises the fifth

20   and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at

21   828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

22

23   **B.**    **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

24          At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

25   December 1, 2009, the alleged onset date.[2]  [AR at 24.]  At step two, the ALJ concluded that

26

27

28      [2]  The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014.  [AR at 22.]

plaintiff has the severe impairments of osteoarthritis of the left knee; mild degenerative joint disease of the bilateral hips; and morbid obesity.  [Id.]  She also determined that plaintiff's hypertension and diabetes mellitus were non-severe.  [AR at 25.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [Id.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[4] as follows:

> [L]ifting up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking up to 6 hours in an 8-hour workday, and sitting up to 6 hours in an 8-hour workday, with the following restrictions:  she can only occasionally bend, stoop, crouch, crawl, and climb stairs; she must avoid climbing ladders, working at heights or around heavy or moving machinery; and she is literate but not fluent in the English language.

[AR at 26.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a short order cook.  [AR at 29, 45-46.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of December 1, 2009, through October 22, 2014, the date of the decision.  [AR at 29-30.]

/

/

/

---

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

# V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she:  (1) failed to fully and fairly develop the record; and (2) rejected plaintiff's subjective symptom testimony. [AJS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

## A.   MEDICAL OPINIONS

Plaintiff contends that the ALJ erred when she relied on the stand-alone opinions of the state agency non-examining physicians regarding plaintiff's RFC.  [AJS at 4-5, 17-20.]  She argues that on remand, the Court should direct the ALJ to first attempt to obtain an RFC from plaintiff's treating sources, and if she cannot obtain sufficient evidence from the treating source, then she should order a consultative examination. [AJS at 10-11.]

### 1.   Legal Standard

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons."  Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate

1 | reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164

2 | (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763

3 | F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite

4 | specific and legitimate standard "by setting out a detailed and thorough summary of the facts and

5 | conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157

6 | F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than

7 | the [treating or examining] doctors', are correct." Id.

8 |       Although the opinion of a non-examining physician "cannot by itself constitute substantial

9 | evidence that justifies the rejection of the opinion of either an examining physician or a treating

10 | physician," state agency physicians are "highly qualified physicians, psychologists, and other

11 | medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§

12 | 404.1527(f)(2)(i), 416.927(f)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221,

13 | 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment"

14 | in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the

15 | claimant's functional limitations). Reports of non-examining medical experts "may serve as

16 | substantial evidence when they are supported by other evidence in the record and are consistent

17 | with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

18 |

19 |     **2.**   **Analysis**

20 |       Here, the ALJ specifically noted that "the record reveals no restrictions recommended by

21 | the treating doctor," and "does not contain any opinions from treating or examining physicians

22 | indicating that [plaintiff] has limitations greater than those determined in [the] decision." [AR at

23 | 29.] Consequently, although they were both non-examining consulting physicians, the ALJ gave

24 | the November 21, 2012, opinion of Dr. Phillips [AR at 60-62], and the July 12, 2013, opinion of

25 | Dr. Sohn on reconsideration [AR at 82-83], "considerable weight" because they were both board-

26 | certified physicians familiar with the disability program, they had the opportunity to review the

27 | medical records, and "[m]ost importantly, their opinions are consistent with the other evidence of

28 |

record and are uncontradicted by any other medical source statement indicating a greater degree of limitation." [Id.]

Plaintiff argues that because the record does not contain any opinion by a treating or examining physician regarding plaintiff's RFC, the ALJ had a duty to obtain such an opinion. [AJS at 4-5 (citing Mendoza v. Barnhart, 436 F. Supp. 2d 1110, 1116 (C.D. Cal. 2006)).] She submits that in light of the extensive treatment record and evidence of "consistent pain relief seeking behavior," it was error for the ALJ to rely solely on the opinions of the non-examining state agency physicians, who both opined -- based on their review of the record -- that plaintiff would be limited to light work with only occasional postural activities. [AJS at 5; see also AR at 29 (citing AR at 61, 82-83).] She further contends that her morbid obesity further triggered the need for a personal examination as her weight is highly relevant to her ability "to perform weight bearing on her painful knees and hips."[5] [AJS at 6-7 (citations omitted).] Plaintiff submits that "[t]here is no explanation or reasons why obesity would limit posturals but not standing in a morbidly obese person with severe knee and hip pain."[6] [AJS at 6 (citing Perez v. Astrue, 2009 WL 3170041, at *8 (C.D. Cal. 2009)).]

Defendant argues it is plaintiff's burden to prove her case and to present "'complete and detailed objective medical reports' of his or her condition from licensed medical professionals." [AJS at 11 (quoting Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999)).] It appears, however, that plaintiff attempted to do so by presenting her complete and detailed objective medical records from 2010 to 2014 to the ALJ. [AR at 466-575.] Defendant contends that supplementation of the record is not needed here, and cites to two Ninth Circuit decisions she contends demonstrate that "the Ninth Circuit has regularly affirmed ALJ decisions that rest on non-examining doctors' assessments of the medical record." [AJS at 13 (quoting Bray, 554 F.3d at 1221, 1227, Turner,

---

[5]   On March 7, 2011, plaintiff's height was reported at 5 feet 2 inches, with a weight of 262. [AR at 496.]

[6]   The VE testified that if an individual could only stand for six hours, and her past relevant work required that she stand for nine hours (as testified to by plaintiff), then the individual would not be able to perform any of the past work. [AR at 41, 46-47.]

613 F.3d at 1223).] In each of those decisions, however, the treating physician had offered an opinion regarding the plaintiff's functional limitations, inability to work, or disability status, and the issue was whether the ALJ provided sufficient reasons to reject the treating doctors' opinions. [See id. (citations omitted).] Here, the ALJ noted that there were no restrictions recommended by plaintiff's treating doctor, and no opinions from any treating or examining physicians "indicating that [plaintiff] has limitations greater than those determined in this decision." [AR at 29.]

Thus, the issue in this case is not whether the ALJ improperly rejected the opinions of plaintiff's treating providers, but whether the opinions of the state agency physicians alone amount to substantial evidence. It is true that at the time that Drs. Phillips and Sohn reviewed the record, none of plaintiff's treating providers had indicated any RFC limitations or restrictions. However, treatment records from the Family Health Care Centers of Greater Los Angeles, dated February 6, 2014 [AR at 546] and May 1, 2014 [AR at 551] -- after Drs. Phillips and Sohn rendered their opinions -- both indicated that plaintiff should perform only non-weight-bearing exercise in light of her osteoarthritis. The February 6, 2014, treatment note also indicates that plaintiff was "limping during ambulation," that she was being referred for a lumbar-sacral x-ray, and then would be referred to rheumatology. [AR at 546.] The May 1, 2014, note reflects that plaintiff had an appointment with an orthopedist for a steroid injection in her left knee, was being referred for an x-ray of her left hip, and was prescribed Tramadol as needed for her hip pain. [AR at 551.] On May 30, 2014, plaintiff, who was using a cane to ambulate,[7] received a steroid injection for her left knee.[8] [AR at 539.] On June 5, 2014, although plaintiff indicated that her knee pain had

---

[7]    As noted by the ALJ, as far back as November 2011 plaintiff was using a cane "due to the severity of her left knee pain." [AR at 27 (citation omitted).]

[8]    In September, November and December 2011, plaintiff received Platelet Rich Plasma ("PRP") injections in her left knee. [AR at 470, 472, 476-80; see also AJS at 7 n.1.] In September, plaintiff also had fluid drained from her left knee. [AR at 476.] Although after these PRP injections she noted a 75% improvement in her pain [AR at 470], and in January 2012 she stated her knee was getting better with no more pain [AR at 505], in May 2012 she reported that she had been seen by her orthopedist for her knee pain and had received an injection [AR at 504], and in August 2012, she again reported bilateral knee and hip pain, and tenderness was noted in both knees. [AR at 503.]

improved since the steroid injection, she still complained of chronic but intermittent left hip pain, described her pain as ten on a scale of ten, and was again observed using a cane. [AR at 553-54.] Also on June 5, 2014, after the results of plaintiff's left hip x-ray were found to be within normal limits, she was referred for an MRI and to an orthopedist for evaluation and treatment of her left hip pain and her osteoarthritis. [AR at 555.]

Thus, notwithstanding the fact that Drs. Sohn and Phillips allegedly took plaintiff's obesity and osteoarthritis into account in finding her limited to light work, their opinions pre-date the 2014 records that indicate plaintiff should be limited to non-weight-bearing exercise, and had received steroid injection(s) and other treatment for her knee and hip pain. A limitation to non-weight-bearing exercise would seem to be at odds with walking or standing for six hours of an eight-hour day, and is contrary to the ALJ's conclusion that none of plaintiff's doctors set restrictions. As such, the opinions of Dr. Sohn and Dr. Phillips *are* contradicted by these later-acquired medical source statements, which potentially indicate a greater degree of limitation. Therefore, contrary to the ALJ's determination, their opinions are not supported by or consistent with the other evidence in the record, and may not serve as substantial evidence. Andrews, 53 F.3d at 1041.

Remand is warranted on this issue.

## B.   SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [AJS at 20-22, 27-29.]

### 1.   Legal Standard

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

1090, 1102 (9th Cir. 2014) (quoting Lingenfelter, 504 F.3d at 1036) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not find evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." Social Security Ruling ("SSR")[9] 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016), as amended by 2016 WL 1237954 (Mar. 16, 2016) (noting change in the effective date to March 28, 2016). An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of his symptoms. Treichler, 775 F.3d at 1102; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 26-29], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

---

[9]    "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

On March 28, 2016, after the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029. SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we *clarify* that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id. (emphasis added). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."[10] Id. at *2.

---

[10]   The ALJ's 2014 decision was issued before March 28, 2016, when SSR 16-3p became effective, and there is no binding precedent interpreting this new ruling including whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, at *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision); see also Smolen v. Chater, 80 F.3d 1273, 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied (continued...)

### 2.    Analysis

The ALJ noted that plaintiff reported the following:  she "experiences pain and exhausted [sic] after walking one block"; she can perform light household chores, activities of personal hygiene, and prepare simple meals; she can lift light objects; she stopped working in 2009 because she was unable to stand for long periods; she "cannot move her left knee and is unable to walk"[11]; she spends her day sitting and lying down; she is unable to go to the store because of her left knee; and she can walk just a "little bit" but then must stop and rest. [AR at 26 (citations omitted).]  The ALJ found plaintiff to be "less than fully credible" for several reasons. [AR at 27-29.]

First, she stated that plaintiff's daily activities "cannot be objectively verified with any reasonable degree of certainty," and even if plaintiff's daily activities are "truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." [AR at 27.]  However, whether a claimant's daily activities "can[] be objectively verified with any reasonable degree of certainty" is not the standard for evaluating a

---

[10](...continued)
retroactively)).  Here, SSR 16-3p on its face states that it is intended only to "clarify" the existing regulations.  Because the ALJ's findings regarding this issue fail to pass muster irrespective of which standard governs, the Court need not resolve the retroactivity issue.  However, SSR 16-3p would apply on remand.

[11]    The ALJ misstates plaintiff's testimony (which was obtained through an interpreter).  At the hearing, the following colloquy took place:

> Q: But can you tell me more specifically how this discomfort affects you and where the pain is and so forth?
> A: I'm not able to move my knee --
> INTERPRETER:  Indicating the left knee.
> A: -- this one is very difficult for me to move it or when I'm standing.  I'm not able to walk.
> Q: Okay, you -- well, I gather you mean you have difficulty walking?
> A. Yes.

[AR at 42-43.]  It is clear, therefore, that contrary to the ALJ's statement [AR at 26], the meaning of plaintiff's testimony was **not** that she "cannot move her left knee and is unable to walk."

1  claimant's subjective symptom testimony under either SSR 16-3p or SSR 96-7p.  Additionally, this
2  justification "has been used in almost identical form by other ALJs and rejected."  See Baxla v.
3  Colvin, 45 F. Supp. 3d 1116, 1128 (D. Ariz. 2014) (citing cases).  The ALJ also failed to specify
4  the "other reasons" she believed might be contributing to plaintiff's limited daily activities.  Thus,
5  these stated reasons do not provide a legally sufficient basis for the ALJ to discount plaintiff's
6  subjective symptom testimony.

7      Second, the ALJ stated that the "objective clinical findings do not support the extreme
8  limitations alleged."  [AR at 27.]  She noted that plaintiff's course of treatment "has been
9  essentially routine and/or conservative in nature," plaintiff has not sought or received physical
10 therapy,[12] and other than the several knee injections, "there is no indication of any other treatment
11 modalities noted in the file."  [AR at 27-28.]  However, the medical records indicate that plaintiff
12 has complained of severe knee and hip pain for years, has tried a variety of medications, sought
13 alternatives to surgery including PRP treatment and steroid injections [see, e.g., AR at 474
14 (consultation report for PRP treatment injections stating that plaintiff "doesn't want surgery")];
15 undergone several x-rays and been referred for an MRI; and received referrals to an orthopedist
16 and a rheumatologist.  Even assuming -- without deciding -- that this reason as given by the ALJ
17 was specific, clear and convincing, it cannot by itself be the sole legally sufficient reason for
18 discounting plaintiff's credibility.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (finding
19 that while medical evidence alone cannot discredit testimony as to pain, it is one factor that the
20 ALJ is permitted to consider).  Thus, the ALJ's credibility determination rises or falls with the ALJ's
21 other grounds for discrediting plaintiff.

22     Third, the ALJ found that plaintiff did not pursue treatment for other conditions "which
23

24  [12]  Plaintiff cites to an August 8, 2011, treatment note for the proposition that the treating
    doctor "noted that physical therapy had not helped much for several months now."  [AJS at 7
25  (citing AR at 500).]  That note appears to state the following:  "PT – did not [illegible] for several
    months now."  [AR at 500.]  After reviewing this note together with the previous June 17, 2011,
26  treatment note, however, the Court concludes that "PT" refers to "patient," and the note itself
    refers to the fact that plaintiff had not been taking her metformin for several months.
27  [Compare AR at 501 ("PT has not been taking metformin regularly because blood sugar goes
    below 80 when taking it") with AR at 500 ("PT – did not [illegible] for several months now.").]
28

14

1   allegedly *disable*" her, such as migraines, insomnia, and varicose veins, which suggests, along
2   with a lack of medical evidence with respect to these conditions, that she "has consciously
3   attempted to portray impairments and limitations than [sic] are not actually present in order to
4   increase the chance of obtaining benefits." [AR at 27-28 (emphasis added).] The ALJ misstates
5   plaintiff's testimony.  In her Disability Report, plaintiff was simply asked to list all the medical
6   conditions that *limit* her ability to work. [AR at 231.] In response, she listed the following items:
7   severe pain in left and right knees, hypertension, back pain, insomnia, varicose veins, carpal
8   tunnel, and migraines.  [Id.]  There is no indication anywhere in the record that plaintiff was
9   alleging that all of these conditions were in and of themselves disabling -- indeed, it appears that
10  she attempted to provide an accurate response to the question, which merely sought information
11  about the physical conditions she experiences that in some way "limit" her ability to work.  As
12  noted by plaintiff, there is evidence that she complained of wrist pain and was diagnosed with
13  possible carpal tunnel syndrom.[13] [AJS at 27 (citing AR at 556).] She notes that there is also
14  evidence of "fatty liver," and if plaintiff "was looking to exaggerate she would have included this
15  significant health impairment." [AJS at 28.] Plaintiff did not testify at the hearing about any of
16  these other alleged impairments, neither did the ALJ question her about them, and there is
17  otherwise no evidence that plaintiff was attempting to exaggerate her symptoms. The ALJ points
18  to no evidence in the record that plaintiff's treating providers questioned her subjective complaints
19  of knee, wrist, and/or hip pain and, indeed, it appears they took plaintiff's subjective complaints
20  of pain quite seriously, e.g., by sending her to specialists, ordering diagnostic tests, treating her
21  with PRP and steroid injections, and prescribing and adjusting her medication, among other
22  things. See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (noting that "[s]heer disbelief
23  is no substitute for substantial evidence," and finding that ALJ erred by requiring objective
24  evidence of plaintiff's fibromyalgia where plaintiff reported severe fibromyalgia symptoms both
25  before and after diagnosis, and much of her medical record substantially pre-dated her disability

26

27   [13]   Although plaintiff alleges there is record evidence showing that she complained of insomnia and headaches [AJS at 27 (citing AR at 557)], that treatment note actually appears to
28   indicate that plaintiff was "Negative" for insomnia and headache. [See AR at 557.]

15

1 | application).  This was not a legally sufficient basis for the ALJ to discount plaintiff's subjective
2 | symptom testimony.
3 |       Finally, the ALJ stated that "[g]iven [p]laintiff's allegations of totally disabling symptoms, one
4 | might expect to see some indication in the treatment records of restrictions placed on [plaintiff]
5 | by the treating doctor," but "a review of the record in this case reveals no restrictions
6 | recommended by the treating doctor." [AR at 29.] As previously discussed, this statement does
7 | not accurately reflect the record and, therefore, is not a legally sufficient basis for the ALJ to
8 | discount plaintiff's subjective symptom testimony.
9 |       Even if it were supported by the record -- which the Court does not find -- because the
10 | alleged lack of objective medical evidence by itself cannot be the only reason for discounting
11 | plaintiff's testimony, remand is warranted to provide specific, clear and convincing reasons for
12 | discounting plaintiff's subjective symptom testimony, if supported by the evidence. Treichler, 775
13 | F.3d at 1103; Brown-Hunter, 806 F.3d at 493-94.
14 |
15 | **VI.**
16 | **REMAND FOR FURTHER PROCEEDINGS**
17 |       The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan,
18 | 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further
19 | proceedings, or where the record has been fully developed, it is appropriate to exercise this
20 | discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke,
21 | 379 F.3d at 595-96.  Where there are outstanding issues that must be resolved before a
22 | determination can be made, and it is not clear from the record that the ALJ would be required to
23 | find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See
24 | Benecke, 379 F.3d at 593-96.
25 |       In this case, there are outstanding issues that must be resolved before a final determination
26 | can be made.  In an effort to expedite these proceedings and to avoid any confusion or
27 | misunderstanding as to what the Court intends, the Court will set forth the scope of the remand
28 |

proceedings.  First, the ALJ on remand shall either attempt to obtain additional information from plaintiff's treating sources, or order a consultative examination or examinations, with the appropriate examining doctors being provided with all of plaintiff's medical records.  Second, the ALJ on remand shall reassess the medical opinion evidence.  In assessing all of the medical opinion evidence, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others.  Third, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's subjective allegations in accordance with SSR 16-3p and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.  Fourth, if warranted, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as a short order cook.  If plaintiff is not so capable, then the ALJ should proceed to step five and determine, with the assistance of a VE, if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

/

/

/

/

/

/

/

/

/

/

/

## VII.

### CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  October 21 , 2016

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE